William R. Brennan, Jr., J.
This is a proceeding brought under article 78 of the CPLR to annul a determination of the respondent, Town Board of the Town of Oyster Bay, which denied petitioner’s request for a special exception permit to erect garden-type apartment houses for senior citizens.
The petitioner is the contract vendee of a parcel of land approximately nine acres in area located on the northeast corner of the intersection formed by Jericho Turnpike and the Wantagh-Oyster Bay Expressway in Syosset, New York. The property is zoned “ Business F ” and the construction of garden apartments is a permissible use, 1 ‘ when approved by the Town Board, as a special exception after a public hearing ” (art. VIII, § F-l[2a]). Pursuant to article VIII of the ordinance, the petitioner requested permission to construct three garden apartments containing 270 units on a 7.5-acre tract, and a small shopping center to service the proposed tenants on the remaining 1.5 acres. The contemplated structures incorporated special safety features and recreational facilities designed to meet the requirements of elderly people. The applicant stated that 75% of the units would be reserved for occupancy by the so-called senior citizens, and that the remaining 25% would be let to persons of all age groups to prevent a ghetto-like segregation of elderly persons. The application was considered at a public hearing, and was denied.
The settled rule is that the court is not empowered to make new or substitute judgments when reviewing action taken by *386 a Town Board in passing on special exception applications, but is restricted to ascertaining whether there has been illegality, arbitrariness or abuse of discretion (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24). The action of the Towm Board, nevertheless, remains discretionary and the court has the power and duty to ask the board for its reasons to determine whether they are lawful or such as reasonable minds could consider (Matter of Lemir Realty Corp. v. Larkin, supra, p. 24). In the present case, the denial of the application was based primarily on findings that the site was “undesirable” for housing accommodations of senior citizens.
Among the reasons advanced by the board for its rejection of the application, are its findings that (1) the comfort and rest of senior citizens will be disturbed by the noises and fumes from motor vehicles because of the proximity of the premises to heavily travelled highways (Jericho Turnpike and Wantagh-Oyster Bay Expressway); (2) the possible inability of senior citizens to drive will require them to walk along heavily travelled roads without sidewalks to reach public transportation facilities; (3) the public transportation available in the area is inadequate for senior citizens and located at a great distance from the premises, and (4) that other facilities required by senior citizens, such as hospitals, medical, dental, banking and like places are similarly far removed from the proposed apartment site.
Where the legislative body enacts an ordinance caculatedly reserving to itself, without any standards, the power to grant or deny a special exception, it has nevertheless legislatively made a pronouncement that a certain use is conditionally permissible in the particular zone, and, unless it amends its own ordinance, it is bound by that legislative determination. It thereafter acts administratively (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24, supra) and, absent standards to guide its administrative actions it has not confined, limited or hindered itself as an administrative body.
Since the ordinance here contains no standards to guide the board in its determination of the special exception petition, its discretion is said to be “ untrammeled ” (Matter of Shell Oil Co. v. Farrington, 19 A D 2d 555, 556), and while the word “untrammeled” according to Webster’s Third New International Dictionary means ‘ ‘ not confined or limited: not hindered ”, and “ being free and easy ”, its use in judicial opinions is certainly not meant in the absolute sense. There are obviously certain matters which fall outside the area of public health, safety and welfare, which the board is precluded from con *387 sidering even though it is unfettered with statutory standards. (Matter of Larkin Co. v. Schwab, 242 N. Y. 330, 335; Matter of Bar Harbour Shopping Center v. Andrews, 23 Misc 2d 894, 899, 900.)
The question here is whether a Town Board acting in an administrative rather than a legislative capacity may properly consider the age of people who may some day occupy a garden apartment in determining whether or not to grant a special exception permit for the apartment itself. I believe, and it is here held, that age, in and of itself is just as irrelevant a consideration insofar as zoning is concerned as is race, color, creed or physical condition. The determination must be made according to traditional zoning concepts, as to whether a garden apartment is suitable. “ For the purpose of promoting the health, safety, morals, or the general welfare of the community ” (Town Law, § 261; emphasis supplied), and the board’s findings here would appear to have no bearing whatsoever upon these traditional objectives of zoning.
As noted above, all of the board’s findings in the case at bar are concerned with the effect which approval of the application would have upon senior citizens as senior citizens and as future tenants of the garden apartments. They are in no way concerned with the health, safety or welfare of the community. They thus are clearly outside the scope of permissible criteria which a board may consider in an administrative capacity. It must be emphasized that the applicant here seeks no variance and no concessions of any kind. Moreover, its proposal is conceded to be in conformity with the requirements of the Building Code. It must be assumed that the code provisions are sufficient to afford safety to the old as well as the young and middle aged.
Insofar as the findings of the board may be considered as being within the permissible criteria (i.e., off-street parking, traffic congestion, density) they are utterly contrary to the evidence upon which they are allegedly based. The petition is accordingly granted and the determination of the board denying the special exception permit is vacated.